UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------×
ALBERTO RIVERA and MANSOUR CHERIF,

        *Plaintiffs,*                                        17 CV 1483 (MCA) (LDW)

    *v.*

EZ LIMOUSINE LLC and ALEKSANDR MATLS,      **FIRST AMENDED**
individually,                                                       **COMPLAINT**

        *Defendants.*
------------------------------------------------------------------------×

        Plaintiffs Alberto Rivera and Mansour Cherif, by their counsel, The Harman Firm, LLP, allege for their First Amended Complaint against Defendants EZ Limousine LLC and Aleksandr Matls, as follows:

## PRELIMINARY STATEMENT

    1.    Plaintiff Alberto Rivera ("Plaintiff" or "Mr. Rivera") and Plaintiff Mansour Cherif ("Plaintiff Cherif" or "Mr. Cherif") (collectively, "Plaintiffs") were employed by Defendant EZ Limousine LLC ("Corporate Defendant" or "EZ Limo") as limousine drivers. Corporate Defendant is a luxury chauffeur service that provides transportation services for high-profile clients in the New York City metropolitan area. Defendant Aleksandr Matls ("Individual Defendant" or "Mr. Matls") (Individual and Corporate Defendants are collectively referred to hereinafter as "Defendants") is Corporate Defendant's CEO.

    *2.*    Plaintiffs seek damages and costs against Defendants for failing to pay them at the overtime premium rate for hours worked in excess of 40 in a work week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

    3.    Plaintiffs also seek damages and costs against Defendants for failure to maintain and report records, in violation of New Jersey Wage Payment Law (NJWPL), N.J.S.A. 34:11-4.6.

1

4. Plaintiffs also seek damages and costs against Defendants for *quantum meruit* and unjust enrichment for failing to pay Plaintiffs gratuities charged in Defendants' clients, in violation of the New Jersey state common law.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiffs' claims, as Defendants violated Plaintiffs' rights under the FLSA.

6. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NJWPL and common law claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the District of New Jersey, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

8. Plaintiff Rivera, at all times relevant hereto, was and is a resident of Essex County in the State of New Jersey.

9. Plaintiff Cherif, at all times relevant hereto, was and is a resident of Morris County in the State of New Jersey.

10. Upon information and belief, at all times relevant hereto, Corporate Defendant was and is a limited liability company organized under the laws of the State of New Jersey with offices located at 50 Galesi Drive, Wayne, New Jersey 07470 in Passaic County.

11. Upon information and belief, at all times relevant hereto, Individual Defendant was and is Corporate Defendant's CEO and sole owner.

## STATEMENT OF FACTS

**I.**     **Facts Common to Both Plaintiffs**

12. Plaintiffs performed chauffeuring services for Defendants' clients at Individual Defendants' direction. They drove many well-known celebrities, including Aretha Franklin, Cindy Crawford, T-Pain, Tony Bennett, Richard Gere, and the Pittsburgh Pirates baseball team.

13. Defendants provided Plaintiffs with the vehicles that Plaintiffs used when chauffeuring clients.

14. The vehicles that Plaintiffs drove were less than 10,000 pounds.

15. Defendants provided Plaintiffs with company credit cards and business cards.

16. Defendants required Plaintiffs to adhere to prearranged schedules and only permitted Plaintiffs to drive passengers who had made prior arrangements for services; Plaintiffs were not permitted to independently cruise neighborhood to find passengers.

17. Plaintiffs did not drive for other limousine companies while employed by Defendants.

18. Defendants maintained the vehicles or reimbursed Plaintiffs for any money spent on emergency maintenance for the vehicles.

19. Defendants' vehicles were unmetered, without vacancy signs, and were not advertised as taxicabs.

20. Defendants charged their clients a flat fee.

21. Defendants dictated Plaintiffs' schedules, directing them to pick up clients at a moment's notice.

22. Plaintiffs primarily served the entire Mid-Atlantic and New England regions. They picked up and dropped off Defendants' clients in the States of New York, New Jersey,

Massachusettes, Virginia, Pensylvania, and Long Island, including cities like Boston, Philadelphia, and Washington D.C., which are over 70 miles from Defendants' headquarters in Wayne, New Jersey.

23. Defendants did not operate any stands from which potential customers could obtain Defendants' services.

24. Defendants did not pay Plaintiffs whatsoever for time spent travelling to and from client pickup and drop-off locations or time spent waiting.

25. Upon information and belief, Defendant EZ Limo's annual gross revenue was in excess of five hundred thousand dollars ($500,000) during the relevant time period.

26. Defendant Matls supervised Plaintiffs throughout their employments at EZ Limo.

27. Matls was responsible for making hiring and firing decisions; supervising and disciplining EZ Limo employees, including Plaintiffs; deciding which clients EZ Limo would take on; and developing EZ Limo policy and strategy.

28. Plaintiffs did not have a predetermined schedule or set hours.

29. Instead, Plaintiffs worked on an on-call basis: they would receive a text from Matls, informing them that there was a job.

30. Upon receiving such a text from Matls, Plaintiffs were expected to leave immediately to pick up the client.

31. In sum, Matls was in charge of managing and assigning daily tasks to Plaintiffs, and Plaintiffs performed work for EZ Limo at Matls' direction.

**II.   Plaintiff Rivera**

32. From March 4, 2016, to November 18, 2016, Plaintiff Rivera worked as a Senior Chauffeur for Defendants.

33. Throughout his employment at EZ Limo, Mr. Rivera was paid a salary of $1,000 per week.

34. There was no agreement between Plaintiffs and Defendants as to the length of the work; it was assumed to be a 40-hour workweek.

35. As such, Mr. Rivera earned $25.00 per hour.

36. Mr. Rivera worked between 75 and 85 hours per week throughout his employment at EZ Limo, as described below:

    a. Mr. Rivera worked 3 to 4 jobs per day.

    b. Each job typically lasted a minimum of 2 hours and a maximum of 5 hours.

    c. Mr. Rivera worked 7 days per week for 3 weeks each month.

    d. Mr. Rivera worked 6 days per week for one week each month.

    e. Mr. Rivera did not take a sick day, vacation, or personal day in the entirety of his employment at EZ Limo.

37. As a result, Mr. Rivera worked in excess of 40 hours in every week of his employment at EZ Limo, yet Defendants never paid Mr. Rivera at the overtime premium rate for hours worked in excess of 40 in a work week.

**III.    Plaintiff Cherif**

38. On or about April 25, 2015, Mr. Cherif began working for Defendants as a Driver.

39. Mr. Cherif worked for EZ Limo from approximately April 25, 2015, through July 25, 2015 ("Period I"), and again from approximately July 17, 2016, through February 3, 2017 ("Period II").

40. Throughout Mr. Cherif's employment, Defendants paid him at an hourly rate of $20.00 per hour.

41.     Throughout Mr. Cherif's employment at EZ Limo, his hours varied considerably, as his work schedule was determined by EZ Limo's business needs.

42.     Mr. Cherif worked hours in excess of 40 in a work week in 9 weeks of his employment during Period I, as described below:

   a. 48 hours in the week beginning April 26, 2015, and ending May 2, 2015;

   b. 100.5 hours in the week beginning May 3, 2015, and ending May 9, 2015;

   c. 62 hours in the week beginning May 10, 2015, and ending May 16, 2015;

   d. 69 hours in the week beginning May 17, 2015, and ending May 23, 2015;

   e. 66.5 hours in the week beginning May 31, 2015, and ending June 6, 2015;

   f. 72.5 hours in the week beginning June 14, 2015, and ending June 20, 2015;

   g. 66.5 hours in the week beginning June 21, 2015, and ending June 27, 2015;

   h. 90 hours in the week beginning June 28, 2015, and ending July 4, 2015; and

   i. 64 hours in the week beginning July 5, 2015, and ending July 11, 2015.

43.     Mr. Cherif worked hours in excess of 40 in a work week in 13 weeks of his employment during Period II, as described below:

   a. 49.5 hours in the week beginning July 24, 2016, and ending July 30, 2016;

   b. 99 hours in the week beginning September 18, 2016, and ending September 24, 2016;

   c. 108 hours in the week beginning September 25, 2016, and ending October 1, 2016;

   d. 60 hours in the week beginning October 2, 2016, and ending October 8, 2016;

   e. 75.5 hours in the week beginning October 9, 2016, and ending October 15, 2016;

    f. 60 hours in the week beginning October 16, 2016, and ending October 22, 2016;

    g. 60 hours in the week beginning October 23, 2016, and ending October 29, 2016;

    h. 48.5 hours in the week beginning October 30, 2016, and ending November 5, 2016;

    i. 71.5 hours in the week beginning November 13, 2016, and ending November 19, 2016;

    j. 64 hours in the week beginning November 20, 2016, and ending November 26, 2016;

    k. 69.5 hours in the week beginning December 4, 2016, and ending December 10, 2016;

    l. 70.5 hours in the week beginning December 25, 2016, and ending December 31, 2016; and

    m. 49.5 hours in the week beginning January 8, 2017, and ending January 14, 2017.

44. As a result, Mr. Cherif worked in excess of 40 hours in 22 weeks of his employment at EZ Limo, yet Defendants never paid Mr. Cherif at the overtime premium rate for hours worked in excess of 40 in a work week.

**IV.**     **Gratuity Claims**

45. Upon information and believe, Defendants charge their clients a "gratuity" on each job.

46. Upon information and belief, these gratuities are individually calculated for each job based on several factors, including client, job length, and vehicle type.

47. However, Plaintiffs never received any gratuities for any ride.

48. Upon information and belief, Defendants retained the chauffeurs' gratuities.

49. Upon information and belief, Defendants' clients expected these gratuities to be paid to Defendants' drivers and not retained solely by Defendants.

50. As a result, Defendants' clients often would not give Plaintiffs any tip, believing that they had already paid this tip in the form of the charged gratuity.

### V.     Record-Keeping Claims

51. Defendants also failed to adhere to the record requirements set forth in the NJWPL by failing to:

   a. notify Plaintiffs, at the time of their hire, of their rate of pay and the regular payday designated by EZ Limo;

   b. notify Plaintiffs of changes in pay rates or paydays prior to the time of such changes;

   c. furnish Plaintiffs with a statement of deductions made from their wages for each pay period in which deductions were made; and

   d. upon information and belief, keep and preserve records as to Plaintiffs' employment with EZ Limo, including wage and hour records.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Unpaid Overtime in Violation of the FLSA**

52. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 52 with the same force as though separately alleged herein.

53. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA.

54. The FLSA mandates that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 in a workweek.

55. Defendants willfully violated the FLSA's overtime requirement by not paying Plaintiffs at the overtime premium rate for hours worked in excess of 40 in a workweek.

56. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### SECOND CAUSE OF ACTION
**Failure to Maintain and Report Records in Violation of the NJWPL**

57. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 56 with the same force as though separately alleged herein.

58. The NJWPL mandates that employers must, among other things:

   a. notify employees at the time of hiring, of the rate of pay, and of the regular payday designated by the employer;

   b. notify employees of any changes in the pay rates or paydays prior to the time of such changes;

   c. furnish each employee with a statement of deductions made from their wages for each pay period such deductions are made;

9

    d. keep posted in a place accessible to his employees an abstract of this act furnished by the commissioner; and

    e. make and preserve records, including wage and hour records, for non-exempt employees in accordance with the provisions of the NJWPL.

59. Defendants failed to adhere to these record maintaining and reporting requirements.

60. As such, Defendants have violated the NJWPL.

### THIRD CAUSE OF ACTION
***Quantum Meruit* in Violation of the New Jersey State Common Law**

61. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

62. Plaintiffs performed services for Defendants in good faith.

63. Defendants accepted Plaintiffs' services rendered.

64. Plaintiffs' services were rendered with the expectation of compensation.

65. The value of Plaintiffs' services was calculated in part by gratuities.

66. By failing to pay Plaintiffs the gratuities they were owed, Defendants failed to compensate Plaintiffs for the reasonable value of their services.

67. Plaintiffs are entitled to recover from Defendants their unpaid compensation and interest.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment in Violation of the New Jersey State Common Law**

68. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. Defendants retained gratuities that Defendants' clients intended for Plaintiffs and to which Plaintiffs were entitled.

70. Defendants were enriched by retaining these gratuities.

71. Defendants' enrichment was at Plaintiffs' expense: Plaintiffs suffered an economic loss as a direct consequence of Defendants' enrichment.

72. The circumstances were such that equity and good conscience require Defendants to make restitution to Plaintiffs.

73. Plaintiffs are entitled to recover from Defendants their unpaid compensation and interest.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 24, 2017

By: *Edgar Rivera*
Edgar M. Rivera
Walker G. Harman, Jr.
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*